Robert C. Moest, Of Counsel, SBN 62166
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@aol.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LAURIE A. HANNA, derivatively on behalf of FISKER INC.,

Plaintiff,

v.

HENRIK FISKER, GEETA GUPTA-FISKER, JOHN FINNUCAN, WENDY J. GREUEL, MARK E. HICKSON, WILLIAM R. MCDERMOTT, RODERICK K. RANDALL, NADINE L. WATT, and MITCHELL ZUKLIE,

Defendants,

and

FISKER INC.,

Nominal Defendant.

Case No.:

**DEMAND FOR JURY TRIAL**

<u>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**</u>

## INTRODUCTION

Plaintiff Laurie A. Hanna ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of nominal defendant Fisker Inc. ("Fisker" or the "Company"), files this Verified Shareholder Derivative Complaint against defendants Henrik Fisker ("H. Fisker"), Geeta Gupta-Fisker ("Gupta-Fisker"), John Finnucan ("Finnucan"), Wendy J. Greuel ("Greuel"), Mark E. Hickson ("Hickson"), William R. McDermott ("McDermott"), Roderick K. Randall ("Randall"), Nadine I. Watt ("Watt"), and Mitchell Zuklie ("Zuklie") (collectively, the "Individual Defendants," and together with Fisker, "Defendants") for breaches of their fiduciary duties as directors and/or officers of Fisker, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and against Defendants H. Fisker, Gupta-Fisker, and Finnucan for contribution under Sections 10(b) and 21D of the Exchange Act. As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fisker, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action that seeks to remedy wrongdoing committed by the Individual Defendants from August 3, 2023 through November 20, 2023, inclusive (the "Relevant Period").

2.     Fisker is an electric vehicle company founded by H. Fisker and Gupta-Fisker

in 2016. The Company is the successor to Fisker Automotive—an automotive company founded by H. Fisker and Bernhard Koehler—which filed for bankruptcy in 2014. In October 2020, Fisker went public through a reverse merger with a special purpose acquisition company ("SPAC") known as Spartan Energy Acquisition Corp. Fisker has one electric vehicle model currently launched, the Fisker Ocean (the "Ocean"), which was released in the United States in June 2023.

3.      On August 4, 2023, Fisker issued a press release announcing its financial results for the second quarter of 2023. Among other things, the press release represented to investors that "Fisker expects to produce 20,000-23,000 units in 2023[.]" Moreover, the press release represented that Fisker had increased the assembly rate for its production of the Oceans "from 80 per day at the end of June" to "140 [per day] at the end of July[.]" However, these statements were false and misleading, as they failed to disclose, *inter alia*, that the Company's infrastructure was limiting its ability to deliver its production.

4.      The truth began to emerge on November 8, 2023 when, before the market opened, Fisker announced that it would not be able to timely complete its financial statements due to the departure of its chief accounting officer ("CAO") and the subsequent appointment of a new CAO. The Company stated that it "expects to file its Form 10-Q by November 14, 2023." Prior to November 8, 2023, the Company had revealed that its former CAO, Defendant Finnucan, provided notice of his intent to resign on September 19, 2023, effective October 27, 2023. Florus Beuting ("Beuting") was then hired, effective as of November 6, 2023, as Fisker's new CAO.

5.      On this news, the Company's stock price fell $0.38, or 8.7%, from a closing price of $4.37 per share on November 7, 2023 to close at $3.99 per share on November 8, 2023, on unusually high trading volume.

6.      Less than a week later, after the market closed on November 13, 2023, the Company published its financial results for the third quarter of 2023, wherein the Company reported: (1) a loss of $91.0 million and $0.27 loss per share; (2) $78.02 million in selling,

general and administrative operating costs and expenses; and (3) $9.42 million for research and development. Thus, in total, the Company reported $87.44 million for total operating costs and expenses for the three months ended September 30, 2023. Moreover, Fisker cut its production forecast for the year, explaining that, although 4,725 Oceans were built during the third quarter, only 1,097 were delivered to customers.

7.     Additionally, Fisker announced that it would be unable to timely file the Company's quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2023. Fisker revealed that, in preparing its results, it had determined "it has material weaknesses" in "internal control over financial reporting."

8.     The same day, Fisker hosted an earnings call with analysts and investors. During the call, Defendants revealed that the delay in reporting was caused by Fisker having a "highly complex quarter" including "very complex accounting along with convertible notes and accounting for derivative" and "things like raw material inventory accounting and finished goods inventory accounting[.]" Fisker further disclosed that "delivery and the service infrastructure" was limiting deliveries and that, as a result, Fisker was "in the process of dramatically overhauling our service and delivery infrastructure."

9.     On this news, the Company's share price fell $0.77, or 18.7%, from a closing price of $4.11 per share on November 13, 2023 to close at $3.34 per share on November 14, 2023, on unusually heavy trading volume.

10.     The truth fully emerged on November 20, 2023 when, after the market closed, Fisker revealed to the investing public that recently-appointed CAO Beuting had provided the Company with notice of his intent to resign from the Company on November 14, 2023— a mere 8 days after his appointment—effective immediately.

11.     On this news, the Company's share price fell $0.35, or 15%, from a closing price of $2.35 per share on November 20, 2023 to close at $2.00 per share on November 21, 2023, on remarkably heavy trading volume.

12.     Later, on November 22, 2023, the Company filed its Form 10-Q quarterly

report with the SEC for the period ended September 30, 2023, which revealed that Fisker had "identified approximately $20 million of expenses" which were "incorrectly recorded primarily as selling, general and administrative expenses in our preliminary earnings results, but were later determined to be associated with production set-up activities" and that "other inventory adjustments were recorded resulting in a $4.0 million increase in net loss subsequent to the preliminary earnings results."

13. During the Relevant Period, the Individual Defendants breached their fiduciary duties to the Company by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, *inter alia*, that: (1) the Company had a material weakness in its internal control over financial reporting; (2) the Company had incorrectly accounted for certain costs; (3) due to the foregoing, Fisker was likely to delay filing its quarterly report; (4) the Company's infrastructure was limiting its ability to deliver its production; and (5) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis at all relevant times.

14. Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

15. In light of the Individual Defendants' misconduct—which has subjected the Company, its Chief Executive Officer ("CEO"), its Chief Financial Officer ("CFO"), and its former CAO, to a federal securities fraud class action lawsuit pending in the United States District Court for the Central District of California (the "Securities Class Action") and which has further subjected the Company to the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who

were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend many millions of dollars.

16.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

17.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, of the substantial likelihood of the directors' liability in this derivative action, of the CEO's, CFO's, and former CAO's liability in the Securities Class Action, and of their not being disinterested and/or independent directors, a majority of the Company's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9), Section 10(b) of the Exchange Act (15. U.S.C. § 78j(b)) and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

19.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

21.     Venue is proper in this District because the alleged misstatements and wrongs complained of herein entered this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

22.     Plaintiff is a current shareholder of Fisker. Plaintiff has continuously held Fisker common stock since before the beginning of the Relevant Period.

**Nominal Defendant Fisker**

23.     Fisker is a Delaware corporation with principal executive offices at 1888 Rosecrans Avenue, Manhattan Beach, CA 90266. Fisker's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "FSR."

**Defendant H. Fisker**

24.     Defendant H. Fisker cofounded the Company and has served as the Company's CEO and Chairman of its Board since the Company's inception in 2016. According to the proxy statement the Company filed with the SEC on August 3, 2023 (the "2023 Proxy Statement"), as of June 28, 2023, Defendant H. Fisker beneficially owned approximately 81,867,237 shares of the Company's common stock, representing 43.7% of total voting power and 22.9% of total ownership. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023 was $5.23, Defendant H. Fisker owned approximately $428.2 million worth of Fisker stock.

25.     For the fiscal year ended December 31, 2022 (the "2022 Fiscal Year"), Defendant H. Fisker received $783,255 in total compensation from the Company. This included $62,400 in salary, $710,000 in bonus, and $10,855 in all other compensation.

26.     The Schedule 14A the Company filed with the SEC on April 27, 2023 (the "April 2023 Proxy Statement") stated the following about Defendant Fisker:

> Henrik Fisker has served as Chairman of the board of directors and as our Chief Executive Officer since October 2020 and prior to this, served as Chief Executive Officer of Legacy Fisker since September 2016 and as President since October 2020, and he is married to Dr. Geeta Gupta-Fisker, his co-founder and our Chief Financial Officer, Chief Operating Officer and a member of our board of directors. Although Mr. Fisker spends significant time with Fisker and is highly active in our management, he does not devote his full time and attention to Fisker. Since 2013, Mr. Fisker has served as Managing Member of HF Design LLC, or HF Design. Mr. Fisker served as a Senior Advisor at McKinsey & Company where he worked from 2013 to

2016. In addition, from 2015 to 2017, he served as the Chief of Product and Design of VLF Automotive, LLC, which he co-founded. From 2007 to 2011, Mr. Fisker served as Chief Executive Officer and Chief Design Officer of Fisker Automotive, Inc., which he co-founded, and he served as Executive Chairman from 2012 to 2013. In 2013, Fisker Automotive, Inc. voluntarily filed for Chapter 11 bankruptcy with the United States Bankruptcy Court for the District of Delaware after Mr. Fisker had stepped down as its Executive Chairman. Prior to that, from 2000 to 2005, Mr. Fisker served as Creative Director at Ford Motor Company and Design Director at Aston Martin Lagonda Ltd, which was a subsidiary of Ford Motor Company at the time. He was also the Designer at Bayerische Flugzeugwerke AG, or BMW, from 1999 to 2000. Mr. Fisker holds a Bachelor of Science in Automotive Design from the ArtCentre College of Design, California. We believe that Mr. Fisker is qualified to serve as a director because of his operational and historical expertise gained from serving as our Chief Executive Officer, and his extensive professional and educational experience in the automotive industry.

**Defendant Gupta-Fisker**

27.     Defendant Gupta-Fisker has served as the Company's CFO and as a Company director since October 2020, and as the Company's Chief Operating Officer ("COO") since March 2021. According to the 2023 Proxy Statement, as of June 28, 2023, Defendant Gupta-Fisker beneficially owned approximately 81,867,237 shares of the Company's common stock, representing 43.7% of total voting power and 22.9% of total ownership. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023 was $5.23, Defendant Gupta-Fisker owned approximately $428.2 million worth of Fisker stock.

28.     For the 2022 Fiscal Year, Gupta-Fisker received $778,585 in total compensation from the Company. This included $62,400 in salary, $710,000 in bonus, and $6,185 in all other compensation.

29.     The April 2023 Proxy Statement stated the following about Defendant Gupta-Fisker:

Dr. Geeta Gupta-Fisker has served as our Chief Financial Officer and as a member of the board of directors since October 2020 and as Chief Operating

Officer since March 2021. Prior to this, Dr. Gupta-Fisker served as a director and Chief Financial Officer of Legacy Fisker since September 2016, and she is married to Henrik Fisker, her co-founder and our Chief Executive Officer and Chairman of our board of directors. Prior to founding Fisker, Dr. Gupta-Fisker served as an Entrepreneur and Investment Manager for the Fisker family from 2014 to 2020. Previously, Dr. Gupta-Fisker served as an Investment Advisor at the Alfred Mann Foundation from 2013 to 2014. Dr. Gupta-Fisker holds a Bachelor's Degree in Zoology/Animal Biology from Maitrey College, New Delhi, India, a Master's Degree in Biotechnology from the University of Kent, United Kingdom, a Doctor of Philosophy, Ph.D., in Biotechnology/Organic Chemistry from the University of Cambridge, United Kingdom, where she was an EPSRC Postdoctoral Research Newton Fellow. We believe that Dr. Gupta-Fisker is qualified to serve as a director because of her historical expertise gained from serving as our Chief Financial Officer, Chief Operating Officer and her financial and investing experience.

**Defendant Finnucan**

30.     Defendant Finnucan served as the Company's CAO from October 2020 until he resigned in October 2023.  According to the 2023 Proxy Statement, as of June 28, 2023, Defendant Finnucan beneficially owned 57,631 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023 was $5.23, Defendant Finnucan owned approximately $301,410 worth of Fisker stock.

31.     For the 2022 Fiscal Year, Defendant Finnucan received $436,661 in total compensation from the Company. This included $325,000 in salary, $97,490 in stock awards, and $14,171 in all other compensation.

32.     The April 2023 Proxy Statement stated the following about Defendant Finnucan:

John C. Finnucan IV has served as our Chief Accounting Officer since October 2020. Previously, Mr. Finnucan served as a Partner in the Americas Professional Practice, Auditing at Ernst & Young LLP from July 2019 to October 2020. Mr. Finnucan joined Ernst & Young LLP ("EY") in 1994 as a Staff and Senior Accountant and he served in various leadership positions of increasing responsibility culminating in his role as Partner in the Americas Professional Practice, Auditing, including EY's Global

professional practice, capital markets center (Tokyo, Japan) from November 2003 through June 2010; he served as Co-Market Leader at EY's West Region, Financial Accounting Advisory Services from July 2010 to December 2011; and from May 2016 to June 2019, he served in EY's Americas Professional Practice, Quality & Regulatory Matters. Mr. Finnucan holds a Bachelor of Science degree in accounting from The University of Akron, Ohio.

**Defendant Greuel**

33.    Defendant Greuel has served as a Company director since October 2020. She also serves as Chair of the Audit Committee. According to the 2023 Proxy Statement, as of June 28, 2023, Defendant Greuel beneficially owned approximately 98,389 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023 was $5.23, Defendant Greuel owned approximately $514,575 worth of Fisker stock.

34.    For the 2022 Fiscal Year, Defendant Greuel received $257,028 in total compensation from the Company. This included $25,000 in fees earned or paid in cash and $232,028 in awards.

35.    The April 2023 Proxy Statement stated the following about Defendant Greuel:

Wendy J. Greuel has served on our board of directors since October 2020 and prior to this, served as a director of Legacy Fisker since June 2020. Since 2013, Ms. Greuel has served as a consultant to the Discovery Cube Science Center. In addition, Ms. Greuel has served as Executive in Residence and Strategic Advisor at the David Nazarian College of Business and Economics (DNCBE), California State University Northridge (CSUN), since 2016. Previously, Ms. Greuel served as the Controller for the City of Los Angeles from 2009 to 2013. Ms. Greuel holds a Bachelor of Arts in Political Science from the University of California, Los Angeles. We believe that Ms. Greuel's extensive executive and professional experience as a business consultant qualify her to serve as a director.

**Defendant Hickson**

36.    Defendant Hickson has served as a Company director since October 2020. He also serves as a member of the Audit Committee and the Nominating and Corporate

Verified Shareholder Derivative Complaint

Governance Committee. According to the 2023 Proxy Statement, as of June 28, 2023, Defendant Hickson beneficially owned 139,211 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023 was $5.23, Defendant Hickson owned approximately $728,074 worth of Fisker stock.

37.     For the 2022 Fiscal Year, Hickson received $247,028 in total compensation from the Company. This included $15,000 in fees earned or paid in cash and $232,028 in awards.

38.     The April 2023 Proxy Statement stated the following about Defendant Hickson:

> Mark E. Hickson has served on our board of directors since October 2020 and prior to this, served as a director of Legacy Fisker since July 2020. Since 2012, Mr. Hickson has served as the Executive Vice President of Corporate Development, Strategy, Quality & Integration at NextEra Energy, Inc., a public company. Mr. Hickson also serves as the Executive Vice President of Corporate Development, Strategy, Quality & Integration at NextEra Energy Partners, LP, an affiliate of NextEra Energy, Inc., and Mr. Hickson serves on its board of directors. Previously, Mr. Hickson served as a Managing Director of Global M&A in the Global Energy & Power Group at Merrill Lynch & Co. Mr. Hickson holds a Bachelor of Science in Aerospace Engineering from Texas A&M University, and a Master of Business Administration, Finance from Columbia University, New York. We believe that Mr. Hickson's extensive executive and professional experience in the energy industry qualify him to serve as a director.

**Defendant McDermott**

39.     Defendant McDermott has served as a Company director since October 2020. He also serves as Lead Independent Director and as a member of the Audit Committee. According to the 2023 Proxy Statement, as of June 28, 2023, Defendant McDermott beneficially owned approximately 104,821 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January

Verified Shareholder Derivative Complaint

23, 2023 was $5.51, Defendant McDermott owned approximately $312 million worth of Fisker stock.

40. For the 2022 Fiscal Year, Defendant McDermott received $267,028 in total compensation from the Company. This included $35,000 in fees earned or paid in cash and $232,028 in awards.

41. The April 2023 Proxy Statement stated the following about Defendant McDermott:

> William R. McDermott has served as a member of the board of directors since October 2020 and prior to this, served as a director of Legacy Fisker since October 2020. Previously, Mr. McDermott has served as the Chief Executive Officer of ServiceNow, Inc., a public digital workflow company, since November 2019. From 2010 through 2014, Mr. McDermott served as Co-Chief Executive Officer, and from 2014 until October 2019, as sole Chief Executive Officer, of SAP SE, or SAP, a multinational software company providing enterprise software. Mr. McDermott joined SAP in 2002 as Chief Executive Officer of SAP America, Inc., and served on the SAP Executive Board from 2008 until October 2019. Prior to joining SAP, Mr. McDermott served as Executive Vice President of Worldwide Sales and Operations at Siebel CRM Systems, Inc. from 2001 to 2002 and served as President of Gartner, Inc. from 2000 to 2001. Mr. McDermott also serves as a member of the board of directors of ServiceNow, Inc. and Zoom Video Communications, Inc. Mr. McDermott holds a Bachelor's Degree from Dowling College, New York, a Master of Business Administration from Northwestern University's Kellogg School of Management and participated in the Executive Development Program of the Wharton School, University of Pennsylvania. We believe Mr. McDermott is qualified to serve as a director because of his extensive executive experience in the technology industry, including his leadership experience with a leading global business, as Chief Executive Officer, and his service on a number of public company boards which provides an important perspective on operations, finance and corporate governance.

**Defendant Randall**

42. Defendant Randall has served as a Company director since October 2020. He is also a member of the Compensation Committee. According to the 2023 Proxy Statement,

as of June 28, 2023, Defendant Randall beneficially owned 2,473,138 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023, was $5.23, Defendant Randall owned approximately $12.9 million worth of Fisker stock.

43.     For the 2022 Fiscal Year, Defendant Randall received $239,528 in total compensation from the Company. This included $7,500 in fees earned or paid in cash and 232,028 in awards.

44.     The April 2023 Proxy Statement stated the following about Defendant Randall:

Roderick K. Randall has served on our board of directors since October 2020 and prior to this, served as a director of Legacy Fisker since March 2018. Since 2010, Mr. Randall has been an Executive Partner at Siris Capital Group, LLC, a private equity firm focused on taking private public technology companies and spinouts of major corporations. Mr. Randall currently serves on the boards of the following private companies: MagLev Aero, Inc., and Mavenir Systems, Inc. He is also a member of the board of Trustees at Vaughn College of Aeronautics and Technology, a private college in East Elmhurst, New York, specializing in aviation and engineering education. Mr. Randall holds a Bachelor of Electrical Engineering with Highest Honor from The Georgia Institute of Technology, and a Master of Sciences in Electrical Engineering and Computer Science from the University of California, Berkeley. We believe that Mr. Randall is qualified to serve as a director because of his extensive experience in the technology industry, his experience as a venture capitalist and his service on multiple boards of various technology companies.

**Defendant Watt**

45.     Defendant Watt has served as a Company director since October 2020. She also serves as Chair of the Compensation Committee. According to the 2023 Proxy Statement, as of June 28, 2023, Defendant Watt beneficially owned 457,030 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023 was $5.23, Defendant Watt owned approximately $2.3 million worth of Fisker stock.

46.     For the 2022 Fiscal Year, Defendant Watt received $250,028 in total compensation from the Company. This included $18,000 in fees earned or paid in cash and

$232,028 in awards.

47.     The April 2023 Proxy Statement stated the following about Defendant Watt:

Nadine I. Watt has served on our board of directors since October 2020 and prior to this, served as a director of Legacy Fisker since June 2020. Ms. Watt has served as the Chief Executive Officer of Watt Companies, Inc. since December 2019 and as the Chief Executive Officer of Watt Capital Partners since June 2022. She previously served as President from 2011 to 2019. She joined Watt Companies, Inc. in 2000 as an asset and project manager and she has served in various positions of increasing responsibility culminating in her current role as Chief Executive Officer. In addition, Ms. Watt has served as the Chair of the Los Angeles Business Council since 2015. She previously served on the board of two publicly traded companies: 1st Century Bancshares, Inc., from May 2008 until 2017 and The New Home Company Inc., from 2009 to 2018. Ms. Watt received her Bachelor of Science in Foreign Service from the Georgetown University School of Foreign Service, Washington D.C. and her Master of Arts from the School of Cinematic Arts at the University of Southern California. We believe that Ms. Watt is qualified to serve as a director because of her extensive experience in management and her prior service on a number of public company boards, which provides an important perspective on operations and corporate governance matters.

**Defendant Zuklie**

48.     Defendant Zuklie has served as a Company director since March 2021. He also serves as Chair of the Nominating and Corporate Governance Committee. According to the 2023 Proxy Statement, as of June 28, 2023, Defendant Zuklie beneficially owned 146,011 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on June 28, 2023 was $5.23, Defendant Zuklie owned approximately $763,638 worth of Fisker stock.

49.     For the 2022 Fiscal Year, Defendant Zuklie received $242,028 in total compensation from the Company. This included $10,000 in fees earned or paid in cash and $232,028 in awards.

50.     The April 2023 Proxy Statement stated the following about Defendant Zuklie:

Mitchell S. Zuklie has served as Chairman and Chief Executive Officer of

Orrick, Herrington & Sutcliffe LLP since 2012 where he is a partner. As a corporate lawyer with approximately 25 years of experience representing public and private companies with structuring, negotiating and managing sophisticated securities and corporate transactional matters, he has extensive experience with federal and state securities laws, public debt and equity financings, mergers and acquisitions, corporate venture transactions, joint ventures and strategic alliances, emerging company formation and management, and corporate governance matters. He serves on the Boards of the Leadership Council for Legal Diversity and the Berkeley Center for Law and Business and the Advisory Boards of the Stanford Law School Center on the Legal Profession and the Harvard Law School Center on the Legal Profession. He is also a member of the Board of the Wild Salmon Center. Mr. Zuklie holds a Juris Doctorate from the University of California, Berkeley School of Law, and a Bachelor of Arts degree from Bowdoin College. We believe Mr. Zuklie's legal and business background including his management experience, qualify him to serve on our board of directors.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

51.     By reason of their positions as officers, directors, and/or fiduciaries of Fisker and because of their ability to control the business and corporate affairs of Fisker, the Individual Defendants owed Fisker and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Fisker in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Fisker and its shareholders so as to benefit all shareholders equally.

52.     Each director and officer of the Company owes to Fisker and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

53.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Fisker, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

54.     To discharge their duties, the officers and directors of Fisker were required to

Verified Shareholder Derivative Complaint

exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

55.     Each Individual Defendant, by virtue of their position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Fisker, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised a majority of the Company's Board at all relevant times.

56.     As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

57.     To discharge their duties, the officers and directors of the Company were

required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Fisker were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, California, and the United States, and pursuant to Fisker's corporate governance and applicable codes of conduct and/or ethics;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Fisker conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Fisker and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Fisker's operations would comply with all applicable laws and Fisker's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)    examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

58.    Each of the Individual Defendants further owed to Fisker and the shareholders the duty of loyalty requiring that each favor Fisker's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

59.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Fisker and were at all times acting within the course and scope of such agency.

60.    Because of their advisory, executive, managerial, directorial, and controlling positions with Fisker, each of the Individual Defendants had access to adverse, nonpublic information about the Company.

61.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Fisker.

## FISKER'S CODE OF ETHICS AND CORPORATE GOVERNANCE

### *Fisker's Code of Business Conduct and Ethics*

62.    Under the heading "Conflicts of Interest," the Company represented that it adopted the Code of Business and Ethics (the "Code of Conduct") to set expectations and provide guidance applicable to all members of the Company's Board of Directors and officers, employees, independent contractors and consultants of the Company (for purposes of the code, all such persons are "employees"). All employees are responsible for reading and understanding the Code of Conduct and using it as a guide to perform their responsibilities for the Company.

63.     Under the heading "Legal Compliance," the Code of Conduct makes clear that all "employees must always obey the law" while conducting their duties. The Company stated that "success depends upon each employee operating within legal guidelines and cooperating with authorities." Therefore "all employees must know and understand the legal and regulatory requirements that apply to the Company's business and to their specific area of responsibility."

64.     Under the heading "Conflicts of Interest," the Code explains that "employees are expected to avoid actual or apparent conflicts of interest between their personal and professional relationships."

65.     Under the heading "Financial Integrity; Public Reporting," the Code of Conduct states that the "Company strives to maintain integrity of the Company's records and public disclosure." It further explains that "the Company's corporate and business records, including all supporting entries to the Company's books of account, must be completed honestly, accurately and understandably . . . the Company depends on the books, records and accounts accurately and fairly reflecting, in reasonable detail, the Company's assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities." To help guarantee the truthfulness of the Company's records and public disclosure, the Company requires that:

- "no entry be made in the Company's books and records that is intentionally false or misleading;

- transactions be supported by appropriate documentation;

- the terms of sales and other commercial transactions be reflected accurately in the documentation for those transactions and all such documentation be reflected accurately in the Company's books and records;

- employees comply with the Company's system of internal controls and be held accountable for their entries;

- any off-balance sheet arrangements of the Company are clearly and appropriately disclosed;

Verified Shareholder Derivative Complaint

- employees work cooperatively with the Company's independent auditors in their review of the Company's financial statements and disclosure documents;
- no cash or other assets be maintained for any purpose in any unrecorded or "off-the-books" fund; and

- records be retained or destroyed according to the Company's document retention policies or procedures then in effect."

66.     Under the heading "Conduct of Senior Financial Employees," the code states that the CEO, CFO, and Corporate Controller must "act with honesty and integrity and use due care and diligence in performing their responsibilities to the Company."

### Fisker's Audit Committee Charter

67.     The purpose of Fisker's Audit Committee (the "Committee") of the Board is to:

(a) Assist the Board in overseeing: (1) the integrity of the Company's financial statements; (2) the Company's compliance with legal and regulatory requirements; (3) the independent auditor's qualifications and independence, and (4) the performance of the Company's internal audit function and independent auditors;

(b) provide such reports as may be required of an audit committee under the rules and regulations promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act"); and

(c) provide oversight with respect to ethical conduct and any related matters."

68.     Under the heading "Authority and Responsibilities," the Committee must "oversee the principal risk exposures facing the Company and the Company's mitigation efforts in respect of such risks, including, but not limited to financial reporting risks, credit and liquidity risks, and environmental and sustainability risks." Furthermore, the Committee is tasked with "review[ing] and discuss[ing] with the independent auditor and management their periodic reviews of the adequacy of the Company's accounting and financial reporting processes and systems of internal control, including any significant deficiencies and material weaknesses in their design or operation."

## **INDIVIDUAL DEFENDANTS' MISCONDUCT**

### **Background**

Verified Shareholder Derivative Complaint

69.     Founded in 2016 by husband-and-wife Defendants H. Fisker and Gupta-Fisker, Fisker is an electric vehicle company focused on creating luxury plug-in-hybrid electric vehicles. Although the Company created four car models (the Ocean, the PEAR, the Alaska, and the Ronin), only the Ocean model, an all-electric SUV, is currently launched and available for purchase on the market. The Ocean was released in the United States in June 2023 and costs about $40,000. The Company's other car models are exclusively available for reservation.

70.     The Company went public through a reverse merger with a SPAC known as Spartan Energy Acquisition Corp in October 2020.

### False and Misleading Statements

#### *2023 Proxy Statement*

71.     On August 3, 2023, Fisker filed the 2023 Proxy Statement with the SEC. Defendants H. Fisker, Gupta-Fisker, Greuel, Hickson, McDermott, Randall, Watt, and Zuklie solicited the 2023 Proxy Statement, filed pursuant to Section 14(a) of the Exchange Act, which contained false and misleading statements.

72.     The 2023 Proxy Statement called for shareholder approval of, *inter alia*, the potential issuance of more than 19.99% of the outstanding shares of Class A Common Stock and the adoption of an amendment to the Second Amended and Restated Certificate of Incorporation.

73.     The 2023 Proxy Statement was materially false and misleading because it failed to disclose, *inter alia*, that: (1) the Company had a material weakness in its internal control over financial reporting; (2) the Company had incorrectly accounted for certain costs; (3) due to the foregoing, Fisker was likely to delay filing its quarterly report; (4) the Company's infrastructure was limiting its ability to deliver its production; and (5) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis at all relevant times.

*August 4, 2023, Press Release*

74.    On August 4, 2023, Fisker announced its second quarter financial results for 2023 in a press release, which stated, in relevant part, the following:

**Second Quarter 2023 Financial Highlights**

- Revenue totaled $825 thousand compared to revenue of $10 thousand in the second quarter of 2022.

- Gross margin was 7.5% on a reported basis, and 18.5% excluding discounted early-stage investor deliveries.

- Loss from operations totaled $87.9 million, including $9.0 million of stock-based compensation expense.

- Net loss totaled $85.5 million and $0.25 loss per share. Weighted average shares outstanding totaled 335.9 million for the three months ended June 30, 2023.

- Net cash used in operating activities totaled $128.1 million and capital expenditures totaled 91.3 million.

- Cash and cash equivalents and restricted cash was $521.8 million as of June 30, 2023; this excludes $300 million in gross proceeds from the July convertible note offering and $33.4 million in VAT receivables which we expect to receive as refunds or to monetize against vehicle sales.

\* \* \*

**2023 Business Outlook**

Fisker expects to produce 20,000 – 23,000 units in 2023, provided Fisker's suppliers and partners can support this volume and ramp. The following information reflects Fisker's expectations for key non-GAAP operating expenses and capital expenditures for full-year 2023. Fisker is projecting the total of these items to be within a range of $565 million to $640 million. Fisker anticipates an 8-12% gross margin range for full year 2023, provided input costs do not change dramatically.

\* \* \*

**Relevant Updates**

- 1,022 Fisker Ocean vehicles were produced in Q2 2023. A couple of suppliers had challenges ramping to targeted Q2 levels, but the company is intently focused on working with all suppliers to swiftly ramp. In July, 1,009 Fisker Oceans were produced up from 741 units in June while the assembly rate per day reached 140 at the end of July, up from 80 per day at the end of June. July had reduced shifts and fewer working days due to the planned Magna Steyr annual summer shutdown.

- Fisker updates 2023 production outlook to 20,000 – 23,000 units as a key supplier required additional time to ramp their capacity to meet or 2H 2023 timeline.

- The Company began US and European deliveries of the Fisker Ocean One in California, Denmark, and Germany with customer deliveries completed in 2Q partly due to a later start in the quarter, logistics optimization, and extra time required to accumulate appropriate quantities for efficient transport.

75.    On August 9, 2023, the Company filed its second quarter 2023 financial results on Form 10-Q with the SEC (the "2Q2023 10-Q") which stated the following, in relevant part:

**Recent Developments**

We achieved several key milestones in May, June, July, and August 2023, including (i) the opening of customer facilities in Munich, London, Oslo and Stockholm; (ii) the initiation of the production ramp up phase for the Fisker Ocean; (iii) the achievement by the Fisker Ocean Extreme with 20 inch wheels of an EPA estimated total range of 360 miles; (iv) the receipt by the Fisker Ocean Extreme of both an EPA Certificate of Conformity and a California Air Resources Board Executive Order; (v) ***the commencement of deliveries of the limited edition Fisker Ocean One in Europe and the United States; (vi) the production of 1,022 Fisker Oceans during the second quarter for customer deliveries, as well as units designated for engineering and marketing use; (vii) the production of 1,009 Fisker Oceans in July – reaching an assembly rate of 140 vehicles per day at the end of month;*** (viii) the publishing of our inaugural Lifecycle Assessment report; (ix) the investment in additional battery pack capacity in July to support higher volumes next year; (x) bolstering the balance sheet with a successful offering of $340 million in aggregate principal of 0% senior unsecured convertible notes due in 2025; (xi)

completing Fisker's first large-scale media event with production vehicles in Vienna, Austria where two dozen media correspondents test drove Fisker Oceans; and (xii) revealing Fisker's future product lineup at the company's inaugural Product Vision Day.

***

As outlined earlier this year, our production forecasts are linked to supply chain readiness and receipt of multiple regulatory homologation approvals across our launch markets. The timing of these approvals shifted in the first half of this year, which impacted our 2023 volume forecasts and supplier ramp readiness. Based on our current supplier capacity expectations, we currently forecast we will produce 20,000 to 23,000 vehicles during 2023.

76.     The 2Q2023 10-Q reported the following in regard to the Company's revenues and the cost of revenues:

In the second quarter of 2023, we began producing vehicles for deliveries to our customers and, accordingly, we are recognizing vehicle revenues from the sale of initial Fisker Ocean SUV's. Merchandise sales and home charging solutions are not intended to compromise a significant portion of the Company's revenues. Over the course of the second half of 2023, we will ramp production volumes at a measured pace to ensure the supplier base can delivery high-quality components in line with our serial production run-rate.

During the six month period ended June 30, 2023, the Company delivered 11 vehicles and recognized net revenue of $712 thousand with related cost of revenues totaling $665 thousand resulting in gross profit of $47 thousand. Gross profit from vehicle sales is lower due to discounts on vehicles sold to certain investors who held rights to a free SUV based on Fisker's based trim level. The Company ad no vehicle sales during the corresponding six month period ended June 30, 2022.

77.     The 2Q2023 10-Q also reported the following inventory as of June 30, 2023, in thousands:

Verified Shareholder Derivative Complaint

| | As of June 30, 2023 |
|---|---|
| Raw materials | $ 109,090 |
| Work in progress | 61,886 |
| Finished goods | 2,020 |
| Total | $ 172,996 |

78.     In addition, the 2Q2023 10-Q reported 33,891,845 convertible senor notes and 36,936,742 stock options and warrants which were excluded from the computation of diluted net loss per share of common stock as of June 30, 2023.

79.     The statements in paragraphs 74-78 above were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose, *inter alia*, that: (1) the Company had a material weakness in its internal control over financial reporting; (2) the Company had incorrectly accounted for certain costs; (3) due to the foregoing, Fisker was likely to delay filing its quarterly report; (4) the Company's infrastructure was limiting its ability to deliver its production; and (5) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis at all relevant times.

### **The Truth Emerges**

80.     The truth began to emerge on November 8, 2023 when, before the market opened, Fisker announced that it would not be able to timely complete its financial statements due to the departure of its CAO and the subsequent appointment of a new CAO. The Company stated that it "expects to file its Form 10-Q by November 14, 2023." Prior to November 8, 2023, the Company had revealed that its former CAO, Defendant Finnucan,

provided notice of his intent to resign on September 19, 2023, effective October 27, 2023. Beuting was then hired, effective as of November 6, 2023, as Fisker's new CAO.

81.     On this news, the Company's stock price fell $0.38, or 8.7%, from a closing price of $4.37 per share on November 7, 2023 to close at $3.99 per share on November 8, 2023, on unusually high trading volume.

82.     Less than a week later, after the market closed on November 13, 2023, the Company published its financial results for the third quarter of 2023, wherein the Company reported: (1) a loss of $91.0 million and $0.27 loss per share; (2) $78.02 million in selling, general and administrative operating costs and expenses; and (3) $9.42 million for research and development. Thus, in total, the Company reported $87.44 million for total operating costs and expenses for the three months ended September 30, 2023. Moreover, Fisker cut its production forecast for the year, explaining that, although 4,725 Oceans were built during the third quarter, only 1,097 were delivered to customers.

83.     Additionally, Fisker announced that it would be unable to timely file the Company's quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2023. Fisker revealed that, in preparing its results, it had determined "it has material weaknesses" in "internal control over financial reporting." The Company also filed a Form NT-10-Q, which stated the following:

> As previously disclosed, the timing of the appointment of a new chief accounting officer effective November 6, 2023 and the departure of the former chief accounting officer effective October 27, 2023 delayed the completion of the Company's financial statements and related disclosures, and delayed the completion of the Company's quarterly assessment of the effectiveness of its disclosure controls and procedures.
>
> In the course of completing the preparation of the Report, the Company determined that it has material weaknesses in the Company's internal control over financial reporting. These material weaknesses will be discussed in the Report.

Verified Shareholder Derivative Complaint

84.     The same day, Fisker hosted an earnings call with analysts and investors. During the call, Defendants revealed that the delay in reporting was caused by Fisker having a "highly complex quarter" including "very complex accounting along with convertible notes and accounting for derivative" and "things like raw material inventory accounting and finished goods inventory accounting[.]" Fisker further disclosed that "delivery and the service infrastructure" was limiting deliveries and that, as a result, Fisker was "in the process of dramatically overhauling our service and delivery infrastructure." On the call, Defendant Gupta-Fisker stated the following, in relevant part:

> Went from $800,000 of revenue to $71 million of revenue. In multiple countries, For ex., very complex accounting along with convertible notes and accounting for derivatives. So we experienced quite a lot of complexity in the business, and as you rightly pointed out, personnel changes as well. We, of course, continue to understand all these different areas. We are continuing to hire. . . . Some other areas that were extremely complex were because of contract manufacturing, things like raw material inventory accounting and finished goods inventory accounting, things that we had not done before and extremely complex as you look at IT integrations with Magna, in-house integrations. So these unfortunately growing pains and we are addressing all these different areas so we can also mature our systems, hire more people, hire more talent to address all these different areas, and it's a work in progress. We are working tirelessly, very hard to get the queue done, so more to come on that.
>
> ***
>
> **Neither our production nor demand are limiting our deliveries, but rather it's the delivery and the service infrastructure**. We have a great product and our customers want the product. We are in the process of dramatically overhauling our service and delivery infrastructure to keep up with the demand until the delivery process has reached our goal, which we expect later this year.

85.     On this news, the Company's share price fell $0.77, or 18.7%, from a closing price of $4.11 per share on November[ ]13, 2023 to close at $3.34 per share on November 14, 2023, on unusually heavy trading volume.

86.     The truth fully emerged on November 20, 2023 when, after the market closed, Fisker revealed to the investing public that recently-appointed CAO Beuting had provided

the Company with notice of his intent to resign from the Company on November 14, 2023—a mere 8 days after his appointment—effective immediately.

87.     On this news, the Company's share price fell $0.35, or 15%, from a closing price of $2.35 per share on November 20, 2023 to close at $2.00 per share on November 21, 2023, on remarkably heavy trading volume.

88.     Later, on November 22, 2023, the Company filed its Form 10-Q quarterly report with the SEC for the period ended September 30, 2023, which revealed that Fisker had "identified approximately $20 million of expenses" which were "incorrectly recorded primarily as selling, general and administrative expenses in our preliminary earnings results, but were later determined to be associated with production set-up activities" and that "other inventory adjustments were recorded resulting in a $4.0 million increase in net loss subsequent to the preliminary earnings results." Fisker therefore reported a net loss of $95.22 million and – loss per share for the three months ended September 30, 2023 and a net loss of $298.38 million for the nine months ended September 30, 2023. Moreover, Fisker also reported $67.65 million in selling, general and administrative operating costs and expenses, as well as $13.42 million for research and development, totaling $71.08 million for total operating costs and expenses for the three months ended September 30, 2023.

## DAMAGES TO FISKER

89.     As a direct and proximate result of the Individual Defendants' conduct, Fisker will lose and expend many millions of dollars.

90.     Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution of or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

91.     Such expenditures also include, but are not limited to, fees, costs, and any payments for resolution of or to satisfy judgements associated with any other lawsuits filed against the Company or the Individual Defendants based on the misconduct alleged herein,

and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

92.     Such expenditures also include, but are not limited to, amounts paid to outside lawyers, accountants, and investigators in connection thereto, and losses of revenues caused by customers' loss of trust in the Company's business and products.

93.     Such expenditures will also include costs incurred in any internal investigations pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

94.     As a direct and proximate result of the Individual Defendants' conduct, Fisker has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations.

## DERIVATIVE ALLEGATIONS

95.     Plaintiff brings this action derivatively and for the benefit of Fisker to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Fisker, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, violations of Section 14(a) of the Exchange Act, as well as for contribution under section 10(b) and 21D of the Exchange Act against Defendants H. Fisker, Gupta-Fisker, and Finnucan.

96.     Fisker is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

97.     Plaintiff is, and has been at all relevant times, a shareholder of Fisker. Plaintiff will adequately and fairly represent the interests of Fisker in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

98.     Plaintiff incorporates by reference and realleges each and every allegation

Verified Shareholder Derivative Complaint

stated above as if fully set forth herein.

99.    A pre-suit demand on the Board is futile and, therefore, excused. When this action was filed, Fisker's Board consisted of the following eight individuals: Defendants H. Fisker, Gupta-Fisker, Greuel, Hickson, McDermott, Randall, Watt, and Zuklie (the "Director-Defendants"). Plaintiff needs only to allege demand futility as to five of the eight Director-Defendants that were on the Board at the time this action was filed.

100.    Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material fact. This renders the Director Defendants unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

101.    Moreover, each of the Director-Defendants solicited the 2023 Proxy Statement which was false and misleading in violation of Section 14(a) of the Exchange Act. Therefore, demand upon them is futile and further excused.

102.    In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly caused or permitted Fisker to make the materially false and misleading statements alleged herein. Specifically, the Director-Defendants knowingly or recklessly made material misrepresentations and/or omissions for the purpose and effect of concealing Fisker's financial well-being and prospects from the investing public and supporting the artificially inflated price of Fisker's securities.  As a result of the foregoing, demand would be futile, and thus excused, as to all of the Director-Defendants, since they all breached their fiduciary duties, face a substantial likelihood of liability, and are not disinterested.

103.    Additional reasons that demand as to Defendant H. Fisker is futile follow. Defendant H. Fisker is Fisker's Co-founder, CEO, and Chairman of its Board and is a controlling shareholder of Fisker. Thus, as the Company admits, he is a non-independent

director. The Company provides H. Fisker with significant compensation for his positions at the Company as detailed above. As CEO, Defendant H. Fisker was ultimately responsible for all of the false and misleading statements and omissions that were made during the Relevant Period. As the Company's highest officer and as the trusted Board Chairman, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant H. Fisker is a defendant in the Securities Class Action. As a result, Defendant H. Fisker breached his fiduciary duties, faced a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant H. Fisker is futile and excused.

104.    Additional reasons that demand as to Defendant Gupta-Fisker is futile follow. Defendant Gupta-Fisker is Fisker's Co-founder, COO, CFO, and Company director, and a controlling shareholder of Fisker. The Company provides Defendant Gupta-Fisker with significant compensation for her roles at the Company as detailed above. As COO, CFO, and a trusted Company director, Defendant Gupta-Fisker conducted little, if any, oversight of the scheme to cause Fisker to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. Furthermore, Defendant Gupta-Fisker is a defendant in the Securities Class Action. As a result, Defendant Gupta-Fisker breached her fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Gupta-Fisker is futile and excused.

105.    Additional reasons that demand as to Defendant Greuel is futile follow. Defendant Greuel has served as Company director since June 2020. As a trusted Company director, Defendant Greuel conducted little, if any, oversight of the scheme to cause Fisker to make false and misleading statements, consciously disregarded her duties to monitor such

controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. As a result, Defendant Greuel breached her fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Greuel is futile and excused.

106. Additional reasons that demand as to Defendant Hickson is futile follow. Defendant Hickson has served as Company director since July 2020. As a trusted Company director, Defendant Hickson conducted little, if any, oversight of the scheme to cause Fisker to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant Hickson breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Hickson is futile and excused.

107. Additional reasons that demand as to Defendant McDermott is futile follow. Defendant McDermott has served as Company director since October 2020. As a trusted Company director, Defendant McDermott conducted little, if any, oversight of the scheme to cause Fisker to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant McDermott breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant McDermott is futile and excused.

108. Additional reasons that demand as to Defendant Randall is futile follow. Defendant Randall has served as Company director since March 2020. As a trusted Company director, Defendant Randall conducted little, if any, oversight of the scheme to cause Fisker to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant Randall breached

Verified Shareholder Derivative Complaint

his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Randall is futile and excused.

109.   Additional reasons that demand as to Defendant Watt is futile follow. Defendant Watt has served as Company director since June 2020. As a trusted Company Director, Defendant Watt conducted little, if any, oversight of the scheme to cause Fisker to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. As a result, Defendant Watt breached her fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Watt is futile and excused.

110.   Additional reasons that demand as to Defendant Zuklie is futile follow. Defendant Zuklie has served as Company director since March 2021. As a trusted Company director, Defendant Zuklie conducted little, if any, oversight of the scheme to cause Fisker to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. As a result, Defendant Zuklie breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Zuklie is futile and excused.

111.   Additional reasons that demand on the Board is futile follow.

112.   Defendants Greuel, Hickson, and McDermott served as members of Fisker's Audit Committee during the Relevant Period. The Audit Committee Defendants violated the Audit Committee Charter by failing to adequately review and discuss Fisker's Forms 10-K and Forms 10-Q; failing to adequately exercise their risk management and risk assessment functions; and failing to ensure adequate Board oversight of Fisker's internal control over financial reporting, disclosure controls and procedures, and Code of Conduct. Thus, the Audit Committee Defendants breached their fiduciary duties and are not disinterested. Therefore, demand is excused and futile as to the Audit Committee

Defendants.

113.   In violation of the Code of Conduct, the Director-Defendants engaged in or permitted the scheme to cause the Company to issue materially false and misleading statements to the investing public, and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act. In addition, the Individual Defendants violated the Code of Conduct by failing to act with integrity, failing to avoid conflicts of interest, failing to ensure the Company's disclosures were accurate, failing to ensure the Company complied with applicable laws, rules, and regulations, and failing to promptly report known violations of the Code of Conduct and the law. Thus, the Director-Defendants breached the Company's own Code of Conduct, are not disinterested, and demand is excused as to them.

114.   Fisker has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director-Defendants have not filed any lawsuits against themselves or any others who were responsible for the wrongful conduct to attempt to recover for Fisker any part of the damages Fisker suffered and will continue to suffer thereby. Thus, any demand upon the Director-Defendants would be futile.

115.   The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director-Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

116.   The acts complained of herein constitute violations of fiduciary duties owed

by Fisker's officers and directors, and these acts are incapable of ratification.

117.   The Director-Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Fisker. If there is a directors' and officers' liability insurance policy covering the Director-Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director-Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director-Defendants were to sue themselves or certain of the officers of Fisker, there would be no directors' and officers' insurance protection. Accordingly, the Director-Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director-Defendants is futile and, therefore, excused.

118.   If there is no directors' and officers' liability insurance, then the Director-Defendants will not cause Fisker to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

119.   Thus, for all of the reasons set forth above, all of the Director-Defendants, and, if not all of them, at least four of them, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM
### Against the Individual Defendants for Violations of Section 14(a) of the Exchange Act

120.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

121.   Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of

interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

122.   Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

123.   The 2023 Proxy Statement failed to disclose that: (1) the Company had a material weakness in its internal control over financial reporting; (2) the Company had incorrectly accounted for certain costs; (3) due to the foregoing, Fisker was likely to delay filing its quarterly report; (4) the Company's infrastructure was limiting its ability to deliver its production; and (5) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis at all relevant times.

124.   In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2023 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2023 Proxy Statement, including but not limited to, the election of directors.

125.   The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2023 Proxy Statement.

126.   Plaintiff, on behalf of Fisker, has no adequate remedy at law.

Verified Shareholder Derivative Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND CLAIM**
**Against the Individual Defendants for Breach of Fiduciary Duties**

127.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

128.   Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Fiskers's business and affairs.

129.   Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

130.   The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Fisker.

131.   In breach of their fiduciary duties owed to Fisker, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (1) the Company had a material weakness in its internal control over financial reporting; (2) the Company had incorrectly accounted for certain costs; (3) due to the foregoing, Fisker was likely to delay filing its quarterly report; (4) the Company's infrastructure was limiting its ability to deliver its production; and (5) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis at all relevant times.

132.   In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact referenced herein, which renders them personally liable to the Company for breaching their fiduciary duties.

133.   Also, in breach of their fiduciary duties, the Individual Defendants caused the

Company to fail to maintain internal controls.

134.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Fisker's securities.

135.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Fisker's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

136.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

137.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Fisker has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

138.    Plaintiff, on behalf of Fisker, has no adequate remedy at law.

Verified Shareholder Derivative Complaint

### THIRD CLAIM
**Against Individual Defendants for Unjust Enrichment**

139.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

140.   By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Fisker.

141.   The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Fisker that was tied to the performance or artificially inflated valuation of Fisker, or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct. This includes lavish compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

142.   Plaintiff, as a shareholder and a representative of Fisker, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

143.   Plaintiff, on behalf of Fisker, has no adequate remedy at law.

### FOURTH CLAIM
**Against Individual Defendants for Abuse of Control**

144.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

145.   The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Fisker, for which they are legally responsible.

146.   As a direct and proximate result of the Individual Defendants' abuse of control,

Fisker has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

147.   Plaintiff, on behalf of Fisker, has no adequate remedy at law.

### FIFTH CLAIM
**Against Individual Defendants for Gross Mismanagement**

148.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

149.   By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Fisker in a manner consistent with the operations of a publicly held corporation.

150.   As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Fisker has sustained and will continue to sustain significant damages.

151.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

152.   Plaintiff, on behalf of Fisker, has no adequate remedy at law.

### SIXTH CLAIM
**Against Individual Defendants for Waste of Corporate Assets**

153.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

154.   The Individual Defendants caused the Company to pay the Individual Defendants excessive salaries and fees, to the detriment of the shareholders and the Company.

155.   As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Fisker to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or

costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

156.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

157.    Plaintiff, on behalf of Fisker, has no adequate remedy at law.

## SEVENTH CLAIM
### Against Defendants H. Fisker, Gupta-Fisker, and Finnucan for Contribution Under Sections 10(b) and 21D of the Exchange Act

158.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

159.    Fisker and Defendants H. Fisker, Gupta-Fisker, and Finnucan are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendant H. Fisker's, Defendant Gupta-Fisker's, and Defendant Finnucan's willful and/or reckless violations of their obligations as officers and/or directors of the Company.

160.    Defendants H. Fisker, Gupta-Fisker and Finnucan, because of their positions of control and authority as officers and/or directors of the Company, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Class Action.

161.    Accordingly, Defendants H. Fisker, Gupta-Fisker, and Finnucan are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

162. As such, Fisker is entitled to receive all appropriate contribution or indemnification from Defendants H. Fisker, Gupta-Fisker, and Finnucan.

## **PRAYER FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)  Declaring that Plaintiff may maintain this action on behalf of Fisker, and that Plaintiff is an adequate representative of the Company;

(b)  Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Fisker;

(c)  Determining and awarding to Fisker the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)  Directing Fisker and the Individual Defendants to take all necessary actions to reform and improve Fisker's corporate governance and internal procedures to comply with applicable laws and to protect Fisker and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws and/or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the board;

2. a provision to permit the shareholders of Fisker to nominate at least four candidates for election to the Board;

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

(e)  Awarding Fisker restitution from Individual Defendants, and each of

them;

(f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.


Dated: December 21, 2023                    Respectfully submitted,

                                            **THE BROWN LAW FIRM, P.C.**

                                            <u>/s/Robert C. Moest</u>                     .
                                            Robert C. Moest, Of Counsel, SBN 62166
                                            2530 Wilshire Boulevard, Second Floor
                                            Santa Monica, California 90403
                                            Telephone: (310) 915-6628
                                            Facsimile: (310) 915-9897
                                            Email: RMoest@aol.com

                                            **THE BROWN LAW FIRM, P.C.**
                                            Timothy Brown
                                            767 Third Avenue, Suite 2501
                                            New York, NY 10017
                                            Telephone: (516) 922-5427
                                            Facsimile: (516) 344-6204
                                            Email: tbrown@thebrownlawfirm.net

                                            *Counsel for Plaintiff*

Verified Shareholder Derivative Complaint

## VERIFICATION

I, Laurie A. Hanna, am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21 day of December, 2023.

DocuSigned by:

Laurie A. Hanna